Larry W. Lee (State Bar No. 228175)
lwlee@diversitylaw.com
Nicholas Rosenthal (State Bar No. 268297)
nrosenthal@diversitylaw.com
DIVERSITY LAW GROUP, P.C.
550 South Hope Street, Suite 2655
Los Angeles, California 90071
(213) 488-6555
(213) 488-6554 facsimile

Dennis S. Hyun (State Bar No. 224240)
dhyun@hyunlegal.com
HYUN LEGAL, APC
550 South Hope Street, Suite 2655
Los Angeles, California 90071
(213) 488-6555
(213) 488-6554 facsimile

Attorneys for Plaintiff and the Class

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| CASSANDRA PACE, as an individual and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>PETSMART, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>        Defendants. | CASE NO. SACV13-500 DOC (RNBx)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:        February 9, 2015<br>Time:       8:30 a.m.<br>Courtroom:  9D<br>Judge:     David O. Carter |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at 8:30 a.m., on February 9, 2015, or as soon thereafter as the matter can be heard in Courtroom 9D of the United Stated District Court, Central District of California, Southern Division, located at 411 West Fourth Street, Santa Ana, CA 92701, before the Honorable David O. Carter, Plaintiff Cassandra Pace ("Plaintiff") will and hereby does move this Court for an Order preliminarily approving the proposed class action settlement.  Specifically, Plaintiff respectfully requests that the Court order as follows:

1.   Grant preliminary approval of the proposed class action settlement;

2.   Schedule a "fairness hearing," i.e., a hearing on the final approval of the settlement with respect to the certified class.  As this Court may recall, on June 4, 2014, this Court issued its Order Granting Class Certification in Part (Doc. No. 58), in which it certified a class of "[a]ll former employees who were employed by Defendants in the State of California at any time from February 20, 2010, through the present, who during their employment received their normal payroll wages through check or direct deposit, but upon their separation of employment received their terminating wages in the form of a Money Network Paycard."  On June 20, 2014, this Court approved the Parties' Stipulation to Disseminate Class Notice, as well as the Amended Class Notice on July 22, 2014 (which includes class members who received final pay through any pay card kit (regardless of whether it was a Money Network Paycard).  (Doc. Nos. 63 & 65).  On August 16 and September 15, 2014, the opt-out periods expired for Paycard Class members with **no opt-outs received by the administrator**.  Thus, with respect to these class members, given that they have not opted-out, they have elected to be bound by any settlement in this case.  As such, for this group, Plaintiff respectfully requests that the Court: (a) authorize the mailing of a proposed notice to the previously certified

1    class of the current settlement; and (b) schedule a "fairness hearing,"

2    i.e., a hearing on the final approval of the settlement.

3    3.    With respect to any employees who received their final pay via

4    paycard kit on or after July 1, 2014, these individuals were never part

5    of any of the classes certified by this Court due to cut-off date of the

6    mailing of class notices being June 30, 2014.  Thus, with respect to

7    these individuals, Plaintiff respectfully requests that the Court: (a)

8    certify this group for purposes of this settlement only; (b) authorize the

9    mailing of a proposed notice to the class of the settlement to these

10    additional class members giving them the opportunity to opt-out of the

11    settlement; and (c) schedule a "fairness hearing," i.e., a hearing on the

12    final approval of the settlement.

13    Plaintiff makes this motion on the grounds that the proposed settlement is fair

14    and within the range of possible final approval.  This Motion is based upon this

15    Notice of Motion and Motion for Preliminary Approval of Class Action Settlement,

16    the attached Memorandum of Points and Authorities in Support, the accompanying

17    Declarations of Larry W. Lee and Dennis S. Hyun, the accompanying Joint

18    Stipulation of Class Action Settlement and Release, any oral argument of counsel,

19    the complete files and records in the above-captioned matter, and such additional

20    matters as the Court may consider.

21

22    DATED:  January 12, 2015          DIVERSITY LAW GROUP, APC

23

24                                     By:   /S/LARRY W. LEE

25                                     Larry W. Lee, Esq.

26                                     Attorney for Plaintiff and the Class

27

28

2

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION AND SUMMARY OF AGREEMENT ................................ 1

A.  History Of The Case ........................................................................... 2

B.  Summary Of The Claim At Issue and the Current Settlement ........................ 4

C.  The Proposed Settlement Class Satisfies The Elements For Certification ....... 7

D.  The Settlement Is Fair, Reasonable, And Adequate ....................................... 8

II.  LEGAL ANALYSIS ............................................................................... 9

A.  Two-Step Approval Process ..................................................................... 9

B.  The Standard For Preliminary Approval ..................................................... 10

C.  The Settlement Is Fair And Reasonable And Not The Result Of Fraud Or
Collusion ........................................................................................................ 11

1.  The Settlement May be Presumed Fair and Reasonable ............................. 11

a.  Experience Of Class Counsel ................................................................. 12

b.  Investigation And Discovery Prior To Settlement .................................... 13

2.  The Settlement Is Fair, Reasonable and Adequate ..................................... 13

a.  Risk Of Continued Litigation ................................................................. 14

b.  The Settlement Is Within The Range Of Reasonableness ......................... 14

c.  The Complexity, Expense, And Likely Duration Of Continued Litigation
Against The Settling Defendant Favors Approval ........................................ 15

d.  Non-Admission Of Liability By Defendant ............................................. 16

D.  Attorneys' Fees, Costs, And Class Representative Enhancement ................. 16

III. CONCLUSION ................................................................................... 17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610, 616-17 (N.D. Cal. 1979) ...................................................14

*Cook v. Niedert*,
142 F.3d 1004, 1015 (7th Cir. 1998) ............................................................17

*Girsh v. Jepson*,
521 F.2d 153, 157 (3d Cir. 1975) ..........................................................14, 15

*Hammon v. Barry*,
752 F. Supp. 1087, 1093-1094 (D.D.C. 1990) .............................................12

*In re Chicken Antitrust Litig.*,
560 F. Supp. 957, 962 (N.D. Ga. 1980) .......................................................11

*In re General Motors Corp.*,
55 F.3d 768, 806 (3d Cir. 1995) ...................................................................14

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*,
834 F.2d 677, 682 (7th Cir. 1987) ................................................................11

*Moore, et al. v. PetSmart, Inc.*,
U.S.D.C. Case No. 5:12-CV-03577-EJD ........................................................3

*National Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523, 528 (C.D. Cal. 2004) ....................................................12, 16

*Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*,
688 F.2d 615, 625 (9th Cir. 1982) ..........................................................10, 15

*Philadelphia Hous. Auth. v. Am. Radiator & Standard. Sanitary Corp.*,
323 F. Supp. 364, 372 (E.D. Pa. 1970) ........................................................10

*Priddy v. Edelman*,
883 F.2d 438, 447 (6th Cir. 1989) ................................................................11

*Sommers v. Abraham Lincoln Federal Sav. & Loan Ass'n*,
79 F.R.D. 571, 576 (E.D. Pa. 1978) .............................................................12

ii

*Steinberg v. Carey*,

    470 F. Supp. 471, 478 (S.D.N.Y. 1979) .........................................................12

*Util. Reform Project v. Bonneville Power Admin.*,

    869 F.2d 437, 443 (9th Cir. 1989) ..............................................................10

*Van Bronkhorst v. Safeco Corp.*,

    529 F.2d 943, 950 (9th Cir. 1976) ..............................................................16

*Van Vranken v. Atlantic Richfield Co.*,

    901 F. Supp. 294, 299-300 (N.D. Cal. 1995) ..............................................17

*Young v. Katz*,

    447 F.2d 431, 433-34 (5th Cir. 1971) .........................................................15

**Statutes**

Labor Code § 203 ..................................................................................2, 4, 8, 16

Labor Code § 212 ..................................................................................4, 8, 16

Labor Code § 213 ..................................................................................4, 8, 16

Labor Code § 226 ..................................................................................2

Labor Code § 2698, *et seq.* ..................................................................2, 8

**Rules**

Federal Rule of Civil Procedure 23 ......................................................8

**Other Authorities**

4 Conte & Newberg, Newberg on Class Actions, § 11.26 (4th ed. 2010) ...................

    .........................................................................................10, 12, 15, 16

5 James Wm. Moore et al., Moore's Federal Practice §23.165 (3d ed. 2010).........10

Manual for Complex Litigation ("MCL") (4th ed. 2004), § 21.632 ..............9, 11, 14

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF AGREEMENT

Plaintiff Cassandra Pace ("Plaintiff") seeks preliminary approval of the Joint Stipulation of Class Action Settlement and Release (hereinafter referred to as "Settlement Agreement") that she has reached in the above-captioned matter with Defendant PetSmart, Inc. ("Defendant") (Defendant and Plaintiff collectively referred to as the "Parties").  The Parties have now reached a proposed settlement of the class/representative claims at issue.

Specifically, the Parties have reached a class-wide resolution of the class certified by this Court, which is defined as all former employees who were employed by Defendant in the State of California at any time from February 20, 2010, through the present, who during their employment received their normal payroll wages through check or direct deposit, but upon their separation of employment received their terminating wages in the form of paycard kit.  On June 4, 2014, this Court issued its Order certifying this claim and approved dissemination of an opt-out notice to class members.[1]  Class notice was provided and no class members have opted-out.

The terms of the settlement provide that Defendant shall pay a gross settlement fund of $1 million.  After deduction for claims administration costs, attorneys' fees, costs, and Plaintiff's representative enhancement, the net settlement fund of approximately $570,000.00 will be distributed between an estimated 1,100 class members on a pro rata basis.[2]  Moreover, this is a **non-reversionary settlement**, such that the entire settlement amount will be distributed and no

---

[1] This Court, however, denied certification of Plaintiff's proposed class claim arising from Defendant's failure to timely issue final pay to separated employees in violation of Labor Code Sections 201-203.  Thus, the current settlement only applies to the certified class and the additional employees sought to be certified for settlement purposes only.

[2] This class size of approximately 1,100 individuals will likely have increased by the time of the hearing on this Motion.  The Parties will provide an updated class size estimate at the hearing on this Motion.

remaining amounts, *i.e.*, unclaimed funds, will revert back to Defendant.

Accordingly, through this Motion, Plaintiff respectfully requests preliminary approval of the class action settlement.

## A.    History Of The Case

On February 20, 2013, Plaintiff filed this class action lawsuit in the Orange County Superior Court.  On March 29, 2103, Defendant removed the case to the United States District Court for the Central District of California.  On May 10, 2013, the Parties filed a Stipulation to Permit the Filing of the Proposed First Amended Complaint.  On May 14, 2013, this Court approved the Stipulation and, on May 15, 2013, Plaintiff manually filed the First Amended Complaint.  On May 31, 2013, the Parties filed a Stipulation to Permit the Filing of the Proposed Second Amended Complaint, which this Court approved on June 4, 2013.  Thus, on June 5, 2013, Plaintiff manually filed the operative Second Amended Complaint (the "SAC").

The SAC alleges the following causes of action: (1) Violation of Labor Code §§ 201-203 for failure to pay wages; (2) Violation of Labor Code § 226; (3) Violation of Labor Code § 2698, *et seq*.; (4) Disability Discrimination in Violation of the California Fair Employment and Housing Act (the "FEHA"); (5) Failure to Accommodate in Violation of the FEHA; (6) Failure to Engage in the Interactive Process in Violation of the FEHA; (7) Failure to Prevent Discrimination in Violation of the FEHA; (8) Retaliation in Violation of the FEHA; (9) Wrongful Termination in Violation of Public Policy; and (10) Intentional Infliction of Emotional Distress.[3]

Only the first through third causes of action alleged in the SAC are alleged on a class/representative basis, while the fourth through tenth causes of action are

---

[3]  Plaintiff and Defendant have also settled Plaintiff's individual claims asserted in this lawsuit. The terms of the settlement of Plaintiff's individual, non-class claims, are set forth in a separate document entitled "General Release."

2

alleged individually on behalf of Plaintiff only.  For purposes of this Motion for Preliminary Approval, Plaintiff is seeking approval of only the first through third causes of action.

From the time of removal to the instant settlement, this case has been actively and vigorously litigated by both Parties.  In particular, the Parties conducted significant amounts of written discovery and document productions, heavy motion practice, including obtaining a ruling on class certification, Defendant's motion for a stay based on the settlement of a separate case, *Moore, et al. v. PetSmart, Inc.*, Case No. 5:12-CV-03577-EJD, the depositions of Defendant's Rule 30(b)(6) witnesses on three separate occasions in Phoenix, Arizona, two full sessions of Plaintiff's deposition, and significant investigation, including interviewing numerous class members.  (Declaration of Larry W. Lee ("Lee Decl.") ¶¶ 2, 4-5; Declaration of Dennis S. Hyun ("Hyun Decl.") ¶ 2).

As this Court may recall, on June 4, 2014, this Court issued its Order Granting Class Certification in Part (Doc. No. 58).  Based on the stipulation of the parties, which this Court approved, the certified class was subsequently defined as "[a]ll former employees who were employed by Defendants in the State of California at any time from February 20, 2010, through the present, who during their employment received their normal payroll wages through check or direct deposit, but upon their separation of employment received their terminating wages in the form of a paycard kit" (the "Paycard Class").  (Doc. No. 65).

Based thereon, Defendant provided class contact information to the third-party administrator of all class members whose employment terminated as of June 30, 2014.  (Lee Decl. ¶ 6).  As such, with respect to any employees who received their final pay via paycard kit on or after July 1, 2014, these individuals were never part of any of the classes certified by this Court due to cut-off date of the mailing of class notices being June 30, 2014.  (Lee Decl. ¶ 7).  On August 16 and September 15, 2014, the opt-out periods expired for the Paycard Class members, with **no opt-**

**outs received by the administrator**.  (Lee Decl. ¶ 8).  Thus, with respect to these class members, given that they have not opted-out, they have elected to be bound by any settlement in this case.  (*Id.*)

For purpose of this settlement only, the parties will seek to include all former employees who were employed by Defendant in the State of California at any time from February 20, 2010, through the date this Settlement is preliminarily approved by the Court, who during their employment, received their normal payroll wages through check or direct deposit, but upon their separation of employment received their terminating wages in the form of a paycard kit (which will now also include those employees who did not receive prior class notification due to the class notice mailing cutoff date of June 30, 2014).

### B.    Summary Of The Claim At Issue and the Current Settlement

As fully discussed in Plaintiff's prior Motion for Class Certification, and which Plaintiff incorporates by reference herein, this lawsuit arises out of Defendant's issuance of final pay to separated employees via a paycard kit (whether through Money Network, or ADP) without obtaining written authorization from these employees.  Plaintiff further alleges that these paycards operated similarly to ATM cards, but also required the employee to incur various fees to use.  Moreover, Plaintiff alleges that she and other employees were precluded from accessing the entire amounts on these paycards.  As a result of such conduct, Plaintiff asserts that the payment of wages via paycard kits violated Labor Code Sections 212 and 213.  Plaintiff further contends that employees were not fully paid their final wages because of the fees incurred, which also violates Labor Code Sections 201-203.

Defendant, however, strongly disagrees with Plaintiff's contentions and believes that Plaintiff's claims are without merit.  In particular, there is no published case authority on the issue of whether payment of final wages via paycards violate Labor Code Sections 201-203 and/or 212 and 213.  As such, had this case not resolved through settlement, Defendant planned to file its Motion for

4

Summary Judgment, seeking to dispose of the claims asserted by Plaintiff and the Class on the merits, with prejudice.  If this Motion were granted by this Court, Plaintiff and the Class would have been without any remedy.  Further, to the extent that any appeals would have to be taken, Plaintiff and the Class would not have received any compensation from this case until such appeals were exhausted and assuming that the appeal was decided in Plaintiff's favor.  Therefore, Plaintiff and the Class would have faced substantial risk in proceeding with the litigation had a settlement not been reached.

On September 4, 2014, the Parties attended a lengthy full-day mediation session with Mediator, Michael Dickstein, Esq.  Nevertheless, at the end of this mediation, the Parties were still unable to resolve the case at mediation.  Instead, the Parties had to engage in further negotiations after the mediation with Mr. Dickstein's assistance and were finally able to reach the current settlement.

The negotiations were hard fought and contentious.  As a result thereof, the parties have reached the current settlement, which provides for a total settlement sum of $1,000,000, inclusive of payments to settlement class members, class representative enhancements, attorneys' fees and costs, payment to the State of California, and administration costs.

Pursuant to the terms of the Settlement Agreement, the Net Settlement Amount ("NSA") (after deduction of attorneys' fees, costs, enhancement fees, PAGA penalties, and costs of administration) will be allocated as follows:

> The Settlement Administrator will allocate the Individual Settlement Payments to the Participating Class Members by dividing the Net Settlement Amount by the total number of Participating Class Members.  Participating Class Members are entitled to 100% of the Net Settlement Amount.  Defendant maintains no reversionary right to any portion of the Net Settlement Amount.  If there are any timely submitted Requests for Exclusion, the Settlement Administrator shall proportionately increase the Individual Settlement Payments for each Participating Class Member so that the amount actually distributed to

> Participating Class Members equals 100% of the Net Settlement Amount.

(Settlement Agreement at § 37).

As mentioned, above, a good portion of the settlement class members are already part of the Paycard Class previously certified by this Court. For the members of the Paycard Class, such individuals have already been provided with a class notice and an opportunity to opt out of the class. (Lee Decl. ¶¶ 6-8). Again, with respect to any employees who received their final pay via paycard kit on or after July 1, 2014, these individuals were never part of any of the classes certified by this Court due to cut-off date of the mailing of class notices being June 30, 2014. Lee Decl. ¶ 7). However, with respect to those class members who did receive class notice, upon the expiration of the opt-out period, it was determined that not a single class member opted-out of the Paycard Class. (Lee Decl. ¶¶ 6, 8). Thus, with respect to these class members of the Paycard Class who received the class notice and an opportunity to opt-out, they are bound by this current settlement, and these class members will not be given a further opportunity to opt-out of this current settlement.

In addition, for purposes of this settlement, the Settlement Agreement will further seek to include all former employees in the State of California, whose employment ended at any time between July 1, 2014 through the date this Settlement is preliminarily approved by the Court, who during their employment with Defendant, received their normal payroll wages through check or direct deposit, but upon their separation of employment received their terminating wages in the form of a paycard kit. In other words, the settlement will further extend the cut-off date of the previously certified class to the date this Court grants preliminary approval of this settlement. Because this additional group was not previously provided with a class notice and opportunity to opt-out, they will be provided with such an opportunity through this settlement.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

The Class Members can be and were actually ascertained from Defendant's payroll records.  Based upon Defendant's records, the Parties estimate that the number of unique Class Members is approximately 1,100 individuals.[4]

Finally, no claim forms will be necessary for any class member to participate in the settlement.  Thus, any class member who did not opt-out from the class in connection with the first set of class notices and/or do not opt-out in connection with this settlement notice will not have to take any action to receive their share of the settlement proceeds.

**C.      The Proposed Settlement Class Satisfies The Elements For Certification**

As discussed above, this Court has already previously granted class certification to the Paycard Class.  Thus, there is no need to further seek certification of this group for purposes of this settlement.

As also discussed above, for purposes of this settlement, the Settlement Agreement will further seek to include all former employees in the State of California, whose employment ended at any time between July 1, 2014 through the date this Settlement is preliminarily approved by the Court, who during their employment with Defendant, received their normal payroll wages through check or direct deposit, but upon their separation of employment received their terminating wages in the form of a paycard kit.  In other words, the settlement will further extend the cut-off date of the previously certified class to the date this Court grants preliminary approval of this settlement.  Thus, Plaintiff requests that this Court further extend the Paycard class through the date that this Court grants preliminary approval of this settlement.

For the very same reasons this Court previously granted class certification of

---

[4] Again, this class size of approximately 1,100 individuals will likely have increased by the time of the hearing on this Motion.  The Parties will provide an updated class size estimate at the hearing on this Motion.

7

the Paycard Class, Plaintiff asserts that this additional group can be certified

pursuant to Rule 23 of the Federal Rules of Civil Procedure, including numerosity,

typicality, commonality and superiority.

**D.** **The Settlement Is Fair, Reasonable, And Adequate**

Based on their own respective independent investigations and evaluations,

the Parties and their respective counsel are of the opinion that settlement for the

consideration and on the terms set forth in their Settlement is fair, reasonable, and

adequate and is in the best interests of the Class and the Defendants in light of all

known facts and circumstances and the expenses and risks inherent in litigation.

(Lee Decl. ¶¶ 2, 9-15; Hyun Decl. ¶¶ 4-8).

Defendant denies any liability or wrongdoing of any kind associated with the

claims alleged by Plaintiff.  Defendant maintains that the paycard program

(including paycards issued through Money Network and/or ADP) was lawful, that

Defendant paid out all earned wages to its employees and that such payments were

timely, and that accurate wage statements were provided.  As such, Defendant

maintains that it is not liable for violating Labor Code Sections 201-203, 212, 213,

and 2698, *et seq.*, arising from Defendant's issuance of final pay via paycard kit to

its separated California employees.  In fact, Defendant intended to file a Motion for

Summary Judgment seeking to dispose of these class-wide claims had this case not

resolved through settlement.  As such, Plaintiff and the Class faced the real

possibility of having these claims adjudicated and dismissed on the merits, which

would have left the entire class without a remedy.  Further, to the extent that

Plaintiff's counsel would have to appeal such a decision, Plaintiff and the Class

would not receive any compensation, if any, until all appeals would be exhausted

and the appeal was decided in Plaintiff's favor.

Moreover, based on the approximate 1,100 Class Members, Class Members

will each get a raw average of approximately $515.00 after deduction for attorneys'

fees, enhancement payments, payment to the Labor and Workforce Development

8

Agency ("LWDA"), administration costs and litigation costs.[5]

Moreover, this is a **non-reversionary settlement**, such that the entire settlement amount will be fully distributed to the class and no remaining amounts, *i.e.*, unclaimed funds, will revert back to Defendant.  Further, to the extent that any individuals opt-out of this settlement, class members could actually receive greater amounts based on redistributions of the settlement fund.

## II.   LEGAL ANALYSIS

### A.   Two-Step Approval Process

Any settlement of class litigation must be reviewed and approved by the Court.  This is done in two steps: (1) an early (preliminary) review by the court, and (2) a final review and approval by the court after notice has been distributed to the class members for their comment or objections. The Manual for Complex Litigation, Fourth states:

> Review of a proposed class action settlement generally involves two hearings.  First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation.  In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties....  The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

Manual for Complex Litigation ("MCL") (4th ed. 2004), § 21.632.[6]

Thus, the preliminary approval by the trial court is simply a conditional finding that the settlement appears to be within the range of acceptable settlements.  As Professor Newberg comments, "[t]he strength of the findings made by a judge at

---

[5] The Parties will provide an updated estimate of distribution based on any additional individuals who have become class members since the date that the initial class notices were distributed.

[6] Again, here, the Court has already granted class certification, so provisional class certification is not necessary for approval of this settlement.  Further, those class members who received opt-out notices have already had an opportunity to exclude themselves from this settlement.  The Parties also submit that only those class members who have not yet received class notices should receive opt-out notices to have the opportunity to opt-out.

a preliminary hearing or conference concerning a tentative settlement proposal may vary.  The court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid subject only to any objections that may be raised at a final hearing."  4 Conte & Newberg, Newberg on Class Actions, § 11.26 (4th ed. 2010). Accordingly, a court should grant preliminary approval of a class action settlement where it is within the "range of reasonableness." Here, the Parties have reached such an agreement and have submitted it to the Court in connection with this filing.

**B.     The Standard For Preliminary Approval**

As a matter of public policy, settlement is a strongly-favored method for resolving disputes.  *Util. Reform Project v. Bonneville Power Admin*., 869 F.2d 437, 443 (9th Cir. 1989).  This is especially true in complex class actions such as this case.  *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

Preliminary approval does not require the Court to make a final determination that the settlement is fair, reasonable and adequate.  Rather, that decision is made only at the final approval stage, after class members have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement.  5 James Wm. Moore et al., Moore's Federal Practice §23.165 (3d ed. 2010).  In considering the settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute and need not engage in a trial on the merits.  *Officers for Justice*, 688 F.2d at 625. Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement ... may be submitted to members of the prospective class for their acceptance or rejection."  *Philadelphia Hous. Auth. v. Am. Radiator & Standard. Sanitary Corp*., 323 F. Supp. 364, 372 (E.D. Pa. 1970).

"The judge should raise questions at the preliminary hearing and perhaps seek an independent review if there are reservations about the settlement, such as

10

unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys."  MCL § 21.633.

Here, the proposed settlement does not pose such issues.  This was a highly-contentious litigation with the Parties each being represented by highly-competent counsel.  Significantly, Defendant intended to file a Motion for Summary Judgment to adjudicate and dispose of the claims asserted by Plaintiff and the Class on the merits.  Thus, Plaintiff and the Class faced substantial risks had this matter not resolved through settlement.

Moreover, as discussed above and the declarations submitted herewith, the Parties engaged in substantial investigation and discovery related to the claims and defenses alleged in this case, as well as substantial motion practice, including obtaining an order on class certification.  Further, the proposed settlement was reached after the Parties utilized the assistance of an experienced mediator and after substantial arms-length negotiations between the Parties.

As detailed herein, the proposed Settlement satisfies the standard for preliminary approval as it is well within the range of possible approval and there are no grounds to doubt its fairness.  Counsel for Plaintiff and Defendant have extensive experience in employment law, particularly wage and hour litigation, and reached a settlement only after mediation and extensive arm's-length negotiations.

### C.  The Settlement Is Fair And Reasonable And Not The Result Of Fraud Or Collusion

#### 1.  The Settlement May be Presumed Fair and Reasonable

Courts presume the absence of fraud or collusion in the negotiation of settlement unless evidence to the contrary is offered.  *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co*., 834 F.2d 677, 682 (7th Cir. 1987); *In re Chicken Antitrust Litig*., 560 F. Supp. 957, 962 (N.D. Ga. 1980).  Courts do not substitute their judgment for that of

11

the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation.  *National Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004); *Hammon v. Barry*, 752 F. Supp. 1087, 1093-1094 (D.D.C. 1990); *Steinberg v. Carey*, 470 F. Supp. 471, 478 (S.D.N.Y. 1979); *Sommers v. Abraham Lincoln Federal Sav. & Loan Ass'n*, 79 F.R.D. 571, 576 (E.D. Pa. 1978).

While the recommendations of counsel proposing the settlement are not conclusive, the Court can properly take them into account, particularly where, as here, they have been involved in extensive litigation, informal and formal discovery, appear to be competent, and have experience with this type of litigation. Newberg on Class Actions at §11.47; *Nat'l Rural Telecomms. Coop*., 221 F.R.D. at 528 ("So long as the integrity of the arm's length negotiation process is preserved, however, a strong initial presumption of fairness attaches to the proposed settlement . . . and 'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.") (Citations omitted).

### a.    Experience Of Class Counsel

Here, both counsel for Plaintiff and Defendant have a great deal of experience in wage and hour class action litigation.  Plaintiff's attorneys have been approved as class counsel in a number of other wage/hour class actions and have litigated class action cases for years.  (Lee Decl. ¶¶ 16-19; Hyun Decl. ¶¶ 9-13).  Moreover, Plaintiff's Counsel conducted an extensive investigation of the factual allegations involved in this case.  (Lee Decl. ¶¶ 2, 4-5; Hyun Decl. ¶ 3).  Plaintiff's Counsel also actively litigated this case, including obtaining class certification and successfully defeating Defendant's Motion for a Stay.  (Lee Decl. ¶¶ 2, 4-6; Hyun Decl. ¶ 3).  Thus, based upon such experience and knowledge of the current case, Plaintiff's Counsel believe that the current Settlement is fair, reasonable and adequate.  (Lee Decl. ¶¶ 2, 9-19; Hyun Decl. ¶¶ 3-8).

12

### b.    Investigation And Discovery Prior To Settlement

Each side has apprised the other of their respective factual contentions, legal theories and defenses, resulting in extensive arms-length negotiations taking place among the Parties.  Indeed, Defendant has provided to Plaintiff detailed data on the damages for the Class.  Moreover, extensive discovery was conducted in this case.  In addition to the written discovery and substantial document and data production, Plaintiff also took the depositions of Defendant's FRCP 30(b)(6) witnesses with respect to the practices at issue here on three (3) separate occasions.  (Lee Decl. ¶¶ 2, 4-5; Hyun Decl. ¶ 3).  Similarly, Defendant took two full days of Plaintiff's deposition.  (Lee Decl. ¶¶ 2, 4-5; Hyun Decl. ¶ 3).

Plaintiff has received the class data necessary to analyze and determine liability and potential exposure on the amount of penalties and damages owed to the class.  In other words, Plaintiff has conducted detailed discovery on both liability and damages.  Based on this independent investigation, the potential value of the class members' settled claims was approximately $2,600,000.00.  (Lee Decl. ¶ 2).

Defendant contends that its paycard program was lawful and that any fees associated or charged by Money Network and/or ADP was proper.  Defendant further contends that it would have prevailed on the merits had this case not resolved through this settlement.

As such, Class Counsel are of the opinion that the Settlement is fair, reasonable, and adequate and is in the best interest of the Class Members in light of all known facts and circumstances and the risks inherent in litigation. (Lee Decl. ¶ 2, 9-15).

### 2.    The Settlement Is Fair, Reasonable and Adequate

The settlement for each participating Class Member is fair, reasonable and adequate, given the inherent risk of litigation, the risk of appeals, the risks in an area where it is argued that the law is unsettled, and the costs of pursuing such litigation.

13

### a.    Risk Of Continued Litigation

To assess the fairness, adequacy and reasonableness of a class action settlement, the Court must weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation.  *In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995) ("present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement."); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979); MCL § 21.62 at 316.

Here, the Settlement affords fair relief to the Class, given that it avoids significant legal and factual battles that otherwise may have prevented the Class from obtaining any recovery at all.  While Plaintiff's attorneys believe that the Class's claims are meritorious, they are experienced and realistic, and understand that the outcome of a trial, and the outcome of any appeals that would inevitably follow if Plaintiff prevailed, are inherently uncertain in terms of both outcome and duration.  Moreover, Defendant intended to file a motion for full and/or partial summary judgment disposing of the class claim had this case not resolved through settlement, which would also have likely generated appeals by the Parties.  Given these uncertainties in litigation and the risk of summary judgment to both Parties, the Parties agreed to resolve this case through a class action settlement, which eliminates the risks of continued litigation while providing a substantial benefit to the class.

### b.    The Settlement Is Within The Range Of Reasonableness

The standard of review for class settlements is whether the Settlement is within a range of reasonableness.  As Professor Newberg comments:

> Recognizing that there may always be a difference of
> opinion as to the appropriate value of settlement, the
> courts have refused to substitute their judgment for that of

14

the proponents. Instead the courts have reviewed settlements with the intent of determining whether they are within a range of reasonableness....

4 Newberg on Class Actions, at §11.45.

Here, the settlement fund is non-reversionary, such that no monies will revert back to Defendant.  Assuming that every class member elects to participate in the settlement, each class member will receive his or her pro rata share in the approximate amount of $515.00.  Moreover, in the event that class members elect to exclude themselves from the settlement, these funds will be redistributed to the class, such that class members' payments will increase.  Further, the settlement fund will be paid out entirely in cash (as opposed to a voucher, coupon, etc.).  In addition, as set forth in the Settlement Agreement, the release is significantly limited as it does not include claims for meal and rest break violations, vacation wages, overtime, minimum wages, etc...  For these reasons, and for the reasons set forth above relating to the total liability and the risks of prevailing on the theories of liability alleged, Plaintiff believes that the current Settlement is fair, reasonable, and adequate.

### c. The Complexity, Expense, And Likely Duration Of Continued Litigation Against The Settling Defendant Favors Approval

Another factor considered by courts in approving a settlement is the complexity, expense, and likely duration of the litigation.  *Officers of Justice*, 688 F.2d at 625; *Girsh*, 521 F.2d at 157.  In applying this factor, the Court must weigh the benefits of the settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial.  *Young v. Katz*, 447 F.2d 431, 433-34 (5th Cir. 1971).

The Settlement provides to all Class Members fair relief in a prompt and efficient manner.  Were the parties to engage in continued litigation of this matter,

the Parties would then litigate the merits of the class claim either by summary judgment or trial, which would have likely led to drawn out appeals by both Parties. Given the realities of litigation, this process places ultimate relief several years away. The idea of balancing a fair recovery now, with settlement dollars being paid out now, as opposed to a years-long litigation and appeals process regarding various potential issues, is a significant factor in favor of approval of the class settlement. *DIRECTV*, 221 F.R.D. at 526-27 ("Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation.").

Indeed, Defendant intended to file a Motion for Summary Judgment, which would have sought dismissal of the claims of Plaintiff and the Class on the merits. Plaintiff and the Class faced substantial risk, given that there is no published case authority on the issue of whether payment of final wages via paycards violate Labor Code Sections 201-203 and/or 212 and 213. Further, if this class case was disposed of through Defendant's anticipated motion for summary judgment, the Class Members could be left without a remedy as a practical matter and courts across the state would have to address the issues presented here in a piecemeal, costly, and time-consuming manner. The Settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); 4 Newberg on Class Actions, at § 11.41.

### d. Non-Admission Of Liability By Defendant

Finally, Defendant denies any liability or wrongdoing of any kind associated with the claims alleged in this lawsuit. Defendant maintains that it has complied at all times with all California wage and hour laws. Because of such denial, if this case is not resolved, it will likely continue to be a long and protracted litigation.

### D. Attorneys' Fees, Costs, And Class Representative Enhancement

Pursuant to the terms of the Agreement, and without opposition from

16

Defendant, Plaintiff will also be entitled to request enhancement amounts, up to a maximum of $5,000 to Plaintiff, which is to compensate the Plaintiff for the actions the Plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions and the amount of time and effort she expended in pursuing the litigation. *Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995).

Similarly, Class Counsel will seek an award of attorneys' fees of not more than 33% of the Maximum Settlement Amount and reimbursement of actual costs of up to $25,000.00. Both the requested enhancement amounts and attorneys' fees and costs will be requested simultaneously with Plaintiff's motion seeking final approval of this class action settlement.

## III. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court grant preliminary approval for the proposed class action settlement and schedule a "fairness hearing," i.e. a hearing on the final approval of the settlement.

Further, with respect to those class members who became part of the class after dissemination of the two class notices, Plaintiff also respectfully requests that the Court approve the proposed notice so that these class members will have an opportunity to opt-out of the settlement.

DATED: January 12, 2015             DIVERSITY LAW GROUP, P.C.


                                     By:   /S/LARRY W. LEE
                                           Larry W. Lee, Esq.
                                           Attorney for Plaintiff and the Class

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**